No. 22-340

IN THE

# Supreme Court of the United States

MARK E. PULSIFER,

*Petitioner*,

v.

UNITED STATES,

*Respondent*.

## On Writ of Certiorari to the United States Court of Appeals for the Eighth Circuit

BRIEF OF *AMICUS CURIAE*
AMERICANS FOR PROSPERITY FOUNDATION
IN SUPPORT OF PETITIONER
————

Michael Pepson
  *Counsel of Record*
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
(571) 329-4529
mpepson@afphq.org

*Counsel for Amicus Curiae*                May 26, 2023

i

# TABLE OF CONTENTS

Table of Authorities ..........................................................ii

Brief of *Amicus Curiae* in Support of Petitioner ........ 1

Interest of *Amicus Curiae* ............................................ 1

Summary of Argument .................................................. 2

Argument ....................................................................... 4

I.   Congress Must Be Presumed to Have Said In Section 402 What It Meant and Meant What It Said. "And" Means "And" ...................................... 4

II.  "And" Is Not a Cryptic Synonym for "Or" .......... 10

III. Taking Congress At Its Word—"And"—Allows Judges to Impose Individualized Sentences that Protect Public Safety, Also Tempering Justice With Mercy ............................................................ 16

IV.  The Rule of Lenity Resolves Any Lingering Doubts ................................................................. 21

V.   It is Not the Province of This Court to Rescue Congress From Its Policy Choices ...................... 26

Conclusion .................................................................. 28

ii

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abramski v. United States*,
    573 U.S. 169 (2014) ............................................. 24

*Alt. Energy, Inc. v. St. Paul Fire &*
    *Marine Ins. Co.*,
    267 F.3d 30 (1st Cir. 2001) .................................... 6

*Anderson v. Wilson*,
    289 U.S. 20 (1933) ............................................... 26

*Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ............................................. 26

*Atlantic Cleaners & Dyers, Inc. v.*
    *United States*,
    286 U.S. 427 (1932) ............................................... 8

*Bifulco v. United States*,
    447 U.S. 381 (1980) ............................................. 25

*Bittner v. United States*,
    143 S. Ct. 713 (2023) ................................... 9, 21, 25

*Bostock v. Clayton Cnty.*,
    140 S. Ct. 1731 (2020) .................................. 4, 5, 26

*Brown v. Gardner*,
    513 U.S. 115 (1994) ............................................... 8

iii

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) ................................ 22

*Commissioner v. Acker,*
    361 U.S. 87 (1959) ............................................. 25

*Concepcion v. United States,*
    142 S. Ct. 2389 (2022) .................................... 16, 27

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992) ...................................... 5, 7, 11

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018) ........................................ 23

*Gross v. FBL Financial Services, Inc.,*
    557 U.S. 167 (2009) ............................................. 5

*Hardt v. Reliance Standard Life Ins.
    Co.,*
    560 U.S. 242 (2010) ............................................. 5

*Harrison v. Vose,*
    50 U.S. (9 How.) 372 (1850) ................................ 24

*Hughey v. United States,*
    495 U.S. 411 (1990) ............................................ 23

*Husky Int'l Elec's, Inc. v. Ritz,*
    578 U.S. 355 (2016) ............................................ 11

*IBP, Inc. v. Alvarez,*
    546 U.S. 21 (2005) ............................................... 9

iv

*Koon v. United States,*
 518 U.S. 81 (1996) ................................................ 16

*Lamie v. United States Tr.,*
 540 U.S. 526 (2004) .............................................. 26

*Lynch v. Alworth-Stephens Co.,*
 267 U.S. 364 (1925) .............................................. 15

*MacDonald v. Pan Am. World Airways,*
 859 F.2d 742 (9th Cir. 1988) .......................... 10, 15

*Marx v. Gen. Revenue Corp.,*
 568 U.S. 371 (2013) .............................................. 11

*Moskal v. United States,*
 498 U.S. 103 (1990) .............................................. 24

*National Credit Union Admin v. First*
 *Nat. Bank & Trust Co.,*
 522 U.S. 479 (1998) ................................................ 8

*Oklahoma v. United States,*
 62 F.4th 221 (6th Cir. 2023) ................................ 27

*Pub. Citizen v. United States Dep't of*
 *Justice,*
 491 U.S. 440 (1989) .............................................. 13

*Richards v. United States,*
 369 U.S. 1 (1962) .................................................. 26

*Rimini St., Inc. v. Oracle USA, Inc.,*
 139 S. Ct. 873 (2019) ............................................ 11

v

*Rotkiske v. Klemm*,
  140 S. Ct. 355 (2019) ............................................... 5

*Shular v. United States*,
  140 S. Ct. 779 (2020) ............................................ 23

*Small v. United States*,
  544 U.S. 385 (2005) ............................................... 13

*Taylor v. United States*,
  495 U.S. 575 (1990) ............................................... 25

*Terry v. United States*,
  141 S. Ct. 1858 (2021) ........................................... 10

*The Adventure*,
  1 F. Cas. 202, F. Cas. No. 93 (No. 93)
  (CC Va. 1812) ...................................................... 22

*United States v. Albertini*,
  472 U.S. 675 (1985) ................................................ 7

*United States v. Booker*,
  543 U.S. 220 (2005) ............................................... 19

*United States v. Davis*,
  139 S. Ct. 2319 (2019) ..................................... 22, 23

*United States v. Garcon*,
  54 F.4th 1274 (11th Cir. 2022) ...... ...... 5, 6, 7, 8, 10,
  11, 12, 14, 17, 18, 19, 24, 27

*United States v. Gardner*,
  32 F.4th 504 (6th Cir. 2022) .......................... 16, 18

vi

*United States v. Gonzalez-Carmona*,
   35 F.4th 636 (8th Cir. 2022) ................................. 17

*United States v. Granderson*,
   511 U.S. 39 (1994) ............................................... 25

*United States v. Hartwell*,
   73 U.S. (6 Wall.) 385 (1868) ................................ 24

*United States v. Haynes*,
   55 F.4th 1075, (6th Cir. 2022) ......................... 2, 27

*United States v. Jones*,
   60 F.4th 230 (4th Cir. 2023) .... 9, 11, 12, 17, 18, 26

*United States v. Lacher*,
   134 U.S. 624 (1890) ............................................. 24

*United States v. Lopez*,
   998 F.3d 431 (9th Cir. 2021) ........3, 5, 6, 12, 27, 28

*United States v. Lopez*,
   No. 19-cr-0261,
   2019 U.S. Dist. LEXIS 142342
   (S.D. Cal. Aug. 21, 2019) ............................... 14, 19

*United States v. Mann*,
   26 F. Cas. 1153 (CC NH 1812) ........................... 22

*United States v. Monsanto*,
   491 U.S. 600 (1989) ............................................... 7

*United States v. Nasir*,
   17 F.4th 459 (3d Cir. 2021) ................................. 23

vii

*United States v. Owens*,
  38 F.4th 1 (8th Cir. 2022) ............................... 16, 19

*United States v. Pace*,
  48 F.4th 741 (7th Cir. 2022)...........7, 10, 11, 14, 26

*United States v. Palomares*,
  52 F.4th 640 (5th Cir. 2022)......3, 5, 6, 8, 9, 12, 15

*United States v. Palomar-Santiago*,
  141 S. Ct. 1615 (2021).............................................. 8

*United States v. Quirante*,
  486 F.3d 1273 (11th Cir. 2007) ............................ 19

*United States v. Santos*,
  553 U.S. 507 (2008)......................................... 22, 23

*United States v. Wiltberger*,
  18 U.S. 76, 5 Wheat. 76 (1820)....................... 22, 23

*Util. Air Reg. Grp. v. EPA*,
  573 U.S. 302 (2014) ................................................ 3

*Wis. Cent. Ltd. v. United States*,
  138 S. Ct. 2067 (2018)............................................. 5

*Wooden v. United States*,
  142 S. Ct. 1063 (2022)..................21, 22, 23, 24, 25

*Yates v. United States*,
  574 U.S. 528 (2015)......................................... 20, 24

viii

*Yellen v. Confederated Tribes of the*
    *Chehalis Reservation,*
    141 S. Ct. 2434 (2021).....................................12, 13

*Youngstown Sheet & Tube Co. v.*
    *Sawyer,*
    343 U.S. 579 (1952).........................................27, 28

**Constitution**

U.S. Const. Art. I, § 1 ...............................................23

**Statutes**

18 U.S.C. § 3553(a) ...................................................17

18 U.S.C. § 3553(a)(1)...............................................17

18 U.S.C. § 3553(a)(2)...............................................17

18 U.S.C. § 3553(f) ................................................2, 16

18 U.S.C. § 3553(f)(1) ............................................7, 12

18 U.S.C. § 3553(f)(2) ................................................18

18 U.S.C. § 3553(f)(3) ................................................18

18 U.S.C. § 3553(f)(4) ................................................18

18 U.S.C. § 3553(f)(5) ................................................18

28 U.S.C. § 1291.......................................................20

ix

First Step Act, Pub. L. No. 115-391, 132
  Stat. 5194 (2018) ................................................ 1, 14

**Guidelines Provisions**

U.S.S.G. § 4A1.1(b) .................................................... 12

U.S.S.G. § 5C1.2 ........................................................ 14

**Federal Register**

88 Fed. Reg. 7,180 (Feb. 2, 2023) ............................. 21

88 Fed. Reg. 28,254 (May 3, 2023) ........................... 14

**Rules**

Sup. Ct. Rule 37.3 ......................................................... 1

**Other Authorities**

Amy Coney Barrett, *Substantive Canons
  and Faithful Agency*,
  90 B.U. L. Rev. 109 (2010).................................... 22

Antonin Scalia & Bryan Garner,
  *Reading Law: The Interpretation of
  Legal Texts* (2012) .................................... 6, 7, 8, 24

J. Sutherland, Statutes and Statutory
  Construction (1891)............................................... 25

x

John F. Schifalacqua,
*A Model for Interpreting Federal
Sentencing Law*,
48 N. Ky. L. Rev. 39 (2021) .................................. 16

Merriam-Webster's Collegiate
Dictionary (11th ed. 2020) ...................................... 6

New Oxford American Dictionary
(3rd ed. 2010) .......................................................... 6

Office of the Legislative Counsel, U.S.
Senate, Senate Legislative Drafting
Manual (1997) ........................................................ 8

Oxford English Dictionary (2d ed. 1989) ................... 6

Shon Hopwood,
*Second Looks & Second Chances*,
41 Cardozo L. Rev. 83 (2019) ................................ 2

Webster's Third New International
Dictionary (1967) ................................................... 6

Webster's Third New International
Dictionary (1993) ................................................... 6

William Blackstone, Commentaries ......................... 22

1

## BRIEF OF *AMICUS CURIAE*
## IN SUPPORT OF PETITIONER

Under Supreme Court Rule 37.3, Americans for Prosperity Foundation ("AFPF") respectfully submits this *amicus curiae* brief in support of Petitioner.[1]

### INTEREST OF *AMICUS CURIAE*

*Amicus curiae* AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas are the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts.

AFPF is part of a coalition of organizations that advocate for an array of "smart on crime" improvements to the criminal justice system that enhance public safety and ensure the protection of constitutional rights, such as the First Step Act ("FSA"), Pub. L. No. 115-391,132 Stat. 5194 (2018). AFPF believes that our criminal justice system must change so that it can more effectively prevent and reduce crime while also restoring the lost trust between communities and the hardworking individuals employed by the system. Victims deserve justice, and our communities deserve a justice system

---

[1] *Amicus* states that no counsel for a party authored this brief in whole or in part and that no person other than *amicus* or its counsel made any monetary contributions intended to fund the preparation or submission of this brief.

2

that ensures we can all realize our American dream. AFPF supports the FSA and believes people can change, and incarcerated persons who do not pose a danger to public safety and have paid their debt to society deserve to have a chance to rejoin their families and communities. After all, "[c]haracter is not static, people change, and the law must recognize this reality." Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 119 (2019). At the same time, the FSA's sentencing provisions allow the federal judiciary to use discretion on a case-by-case basis to protect society by ensuring those who pose a risk to public safety are not granted early release.

AFPF respectfully believes the panel erred by adding atextual limitations to the safety valve provision, 18 U.S.C. § 3553(f), as amended by Section 402 of the FSA. More broadly, AFPF generally opposes mandatory minimums for nonviolent offenses. Instead, offenders should be sentenced as individuals on a case-by-case basis.

## SUMMARY OF ARGUMENT

This "case presents a basic issue of statutory interpretation: does 'and' mean 'and'?" *United States v. Haynes*, 55 F.4th 1075, 1080 (6th Cir. 2022) (Griffin, J., dissenting). Respect for the separation of powers requires the answer to that question must be "yes."

To be sure, "[t]he First Step Act 'is far from a chef d'oeuvre of legislative draftsmanship.' Congress certainly could have used more exacting language when modifying the safety valve in § 3553(f)(1)."

3

*United States v. Lopez*, 998 F.3d 431, 448 (9th Cir. 2021) (M. Smith, J., concurring in part, dissenting in part, and concurring in the judgment) (quoting *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 320 (2014)). But there is no reasonable dispute that Section 402 of the FSA was intended to reduce the universe of defendants convicted of certain nonviolent drug crimes who are subject to mandatory minimums. The question is simply one of degree. The statute's plain text supplies the answer.

With respect to Section 3553(f)(1)'s eligibility criteria, this Court should "take Congress at its word: 'and.'" *United States v. Palomares*, 52 F.4th 640, 659 (5th Cir. 2022) (Willett, J., dissenting). Because this provision uses the conjunctive "and," instead of the disjunctive "or," a defendant must have *all* three criminal history characteristics to be ineligible for the safety valve on that basis. Put differently, no single history characteristic in Section 3553(f)(1), standing alone, will automatically disqualify a defendant from safety-valve eligibility. No canon of statutory interpretation, or combination thereof, can change Section 3553(f)(1)'s unambiguous text or justify a transmogrification of the word "and" into "or." This holds true regardless of whether this particular reform, in practical effect, swept more broadly than Congress had anticipated.

Section 3553(f)(1)'s unambiguous text accords with the FSA's sentencing-reform provisions' structural emphasis on protecting public safety, while granting judges the discretion to temper justice with a degree of mercy in individual cases, when appropriate. The

4

*sole* function of the safety valve provision is to limit the automatic imposition of draconian mandatory minimum sentences for certain nonviolent drug offenses. And in addition to Section 3553(f)(1), Section 3553(f) contains numerous other threshold requirements that must be met as a condition of *eligibility* for the broadened safety valve. These additional requirements operate to screen out the mine run of offenders for whom relief would not be appropriate.

At the least, it is difficult to conclude beyond reasonable doubt that "and" unambiguously means "or." Accordingly, any lingering doubts as to Section 3553(f)(1)'s sweep should be resolved in favor of principles of lenity. Whatever the policy merits, reading "and" to mean "and" best respects due process, Congress's legislative choices, and the separation of powers. It is not this Court's role to rescue Congress from its policy choices as expressed in the text of enacted legislation. If Congress meant "or" when it wrote "and," then Congress is free to amend the statute.

For these reasons, this Court should reverse the decision below.

## ARGUMENT

### I.   Congress Must Be Presumed to Have Said In Section 402 What It Meant and Meant What It Said. "And" Means "And."

"This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the

5

time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020); *see also Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("[O]ur job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" (citation omitted)). "As in all such cases, . . . [this Court] begin[s] by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). "If the words of a statute are unambiguous, this first step of the interpretive inquiry is . . . [also the] last." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

So too here: "and" means "and"; "and" does not mean "or." *See United States v. Garcon*, 54 F.4th 1274, 1277, 1280 (11th Cir. 2022) (en banc) (Pryor, C.J.); *see also Lopez*, 998 F.3d at 448 (M. Smith, J., concurring in part, dissenting in part, and concurring in the judgment) ("'And' means 'and.'"). "[W]hen 'and' is used to connect a list of requirements, the word ordinarily has a 'conjunctive' sense, meaning that all the requirements must be met." *Garcon*, 54 F.4th at 1278; *see also Palomares*, 52 F.4th at 653 (Willett, J., dissenting) ("[T]he plain meaning of 'and' is conjunctive."). *Cf.* Pet. App. 5a ("The most natural reading of 'and' is conjunctive[.]").

"Dictionaries and treatises aren't needed to prove the point, but they uniformly define 'and' this way."

6

*Palomares*, 52 F.4th at 653 (Willett, J., dissenting) (citations omitted). "For the past fifty years, dictionaries and statutory-construction treatises have instructed that when the term 'and' joins a list of conditions, it requires not one or the other, but all of the conditions." *Lopez*, 998 F.3d at 436 (citing Merriam-Webster's Collegiate Dictionary 46 (11th ed. 2020) (defining "and" to "indicate connection or addition"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116–20 (2012); New Oxford American Dictionary 57 (3rd ed. 2010); Oxford English Dictionary 449 (2d ed. 1989); Webster's Third New Int'l Dictionary 80 (1967) (defining "and" to mean "along with or together with" or "as well as")); *see Garcon*, 54 F.4th at 1278 ("'And' means 'along with or together with.'" (quoting And, Webster's Third New Int'l Dictionary (1993))). *Cf.* Pet. App. 5a (similar). That should end the matter. *Cf. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 35 (1st Cir. 2001) ("'And' is not an ambiguous term. Although 'and' might, in rare circumstances, be construed to mean 'or,' to the ordinary or average person 'and' means 'and.'" (citation omitted and emphasis added)). This Court should thus "take Congress at its word: 'and.'" *Palomares*, 52 F.4th at 659 (Willett, J., dissenting).

"Put simply, just as no amount of canon-based massaging could make 'white' mean 'black' or 'up' mean 'down,' none can make the word 'and' mean

7

'or.'"[2] *Garcon*, 54 F.4th at 1290 (Newsom, J., concurring). After all, "'interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature.'" *United States v. Monsanto*, 491 U.S. 600, 611 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). Instead, as Justice Thomas has explained:

> [C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.

*Germain*, 503 U.S. at 253–54. Here, the statute says "and." 18 U.S.C. § 3553(f)(1).

In any event, at least two canons of construction cut against reading "and" to effectively mean "or." Start with the conjunctive/disjunctive canon. Under this canon, "*and* combines items while *or* creates alternatives." Scalia & Garner, *supra*, 116. As a

---

[2] The decision below correctly recognized that "and" is generally conjunctive but mistakenly read "and" in its distributive, as opposed to joint, sense. *See* Pet. App. 5a–6a. This reading effectively transmogrified "and" into "or." *See United States v. Pace,* 48 F.4th 741, 756 (7th Cir. 2022) (Kirsch, J., concurring) ("I recognize that in this statute and others like it, a distributive reading makes 'and' interchangeable with a disjunctive 'or.'").

8

general matter, "[a]*nd* joins a conjunctive list, *or* a disjunctive list[.]"[3] *Id.* "After a negative, the conjunctive *and* is still conjunctive: *Don't drink and drive.*" *Id.* at 119; *see also Palomares*, 52 F.4th at 653 (Willett, J., dissenting) ("'And' is still conjunctive when it follows a negative like 'not' or 'no.' When a negative precedes a conjunctive list, 'the listed things are individually permitted but cumulatively prohibited.'" (quoting Scalia & Garner, *supra*, 119)). As applied here: "Because the conjunctive 'and' joins together the enumerated characteristics, a defendant must have all three before he is ineligible for relief." *Garcon*, 54 F.4th at 1276. *Cf. United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620–21 (2021) ("The requirements  are connected by the conjunctive 'and,' meaning defendants must meet all three.").

Next, consider the presumption of consistent usage. Under this canon, "there is a presumption that a given term is used to mean the same thing throughout a statute[.]" *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)); *see also National Credit Union Admin v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("[S]imilar language contained within the same section of a statute must be accorded a consistent meaning.")

---

[3] *Cf.* Office of the Legislative Counsel, U.S. Senate, Senate Legislative Drafting Manual, § 302, p. 64 (1997) ("In a list of criteria that specifies a class of things— (1) use "or" between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria; and (2) use "and" to indicate that a thing is included in the class only if it meets all of the criteria.").

9

(citation omitted). "The 'normal rule of statutory interpretation' is that 'identical words used in different parts of the same statute are generally presumed to have the same meaning.'" *Bittner v. United States*, 143 S. Ct. 713, 727 (2023) (Gorsuch, J., joined by Jackson, J.) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)).

Here, "Congress used 'and' to join a list of elements 8 times in this very statute. 'Or' joins a list of elements 3 times where Congress wanted to produce the opposite effect. That does not include the countless other uses of 'and' and 'or' in the same statute that do not join a list of elements[.]" *Palomares*, 52 F.4th at 657 (Willett, J., dissenting). In order to read "and" as "or," one "would have to believe that Congress meant to invoke the plain meaning of these words every time except in subsection (f)(1)." *Id.* (Willett, J., dissenting). That cannot be right.

In short, "[i]f Congress wanted any one of the criminal history characteristics to disqualify a defendant, it would have used the word 'or,' which it clearly knows how and when to do as reflected elsewhere in § 3553(f)." *United States v. Jones*, 60 F.4th 230, 234 (4th Cir. 2023); *see Palomares*, 52 F.4th at 652–53 (Willett, J., dissenting) ("If [Congress] wished to withhold safety valve relief from defendants who failed any one of the three sub-sections, it would have (maybe *should* have) joined them together with 'or.'"). It did not.

10

## II.   "And" Is Not a Cryptic Synonym for "Or."

This Court should reject any invitation to edit Section 3553(f)(1) to replace "and" with "or." To begin, as Judge Kozinski put it in a different context:

> As a linguistic matter, 'and' and 'or' are not synonyms; indeed, they are more nearly antonyms. One need only start the day with a breakfast of ham or eggs to be duly impressed by the difference. While 'and' and 'or' are both small words, and are occasionally seen joined with a slash, when they stand alone, they have substantially different meanings with dramatically different effects.

*MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 746 (9th Cir. 1988) (Kozinski, J., dissenting). That observation resonates here. *Cf. Pace*, 48 F.4th at 761 (Wood, J., dissenting in part) ("I cannot agree that the word 'and' is so esoteric that judges are unable to give it its normal meaning. If I order ham and eggs for breakfast, then I assume that the plate will contain some ham and some eggs, not just one or the other. . . . My request, in brief, is conjunctive."). And it would "def[y] common parlance to say," *see Terry v. United States*, 141 S. Ct. 1858, 1864 (2021), that Congress intended that the word "and" meant "or."

The presumption against surplusage—while "not without some force," *Garcon*, 54 F.4th at 1274 (Newsom, J., concurring)—cannot justify jettisoning the word "and's" plain conjunctive meaning, in the joint sense, in favor of either reading "and" as "or" or, alternatively, giving "and" a distributive reading,

11

which would have the same effect. *See Pace*, 48 F.4th at 756 (Kirsch, J., concurring). After all, "[t]he canon against surplusage is not an absolute rule[.]" *Marx v. Gen. Revenue Corp*., 568 U.S. 371, 385 (2013). And "[r]edundancy is not a silver bullet." *Rimini St., Inc. v. Oracle USA, Inc*., 139 S. Ct. 873, 881 (2019). This makes sense because, as a descriptive matter, "[r]edundancies across statutes are not unusual events in drafting[.]"*Germain*, 503 U.S. at 253; *see also Rimini St.,* 139 S. Ct. at 881("Sometimes the better overall reading of the statute contains some redundancy."). "The anti-surplusage canon gives [courts] no license to skirt unambiguous text, and no canon can make the word 'and' in § 3553(f)(1) mean 'or.'" *Garcon*, 54 F.4th at 1289 (Newsom, J., concurring); *see also Jones*, 60 F.4th at 237 ("[T]he presumption against superfluity would not be reason to rewrite an unambiguous statute.").

In any event, reading "and" to mean "and" does not render Section 3553(f)(1)(A) a nullity, as the decision below mistakenly found. *See* Pet. Br. 36–41; Pet. App. 6a–7a & n.2. *Cf. Husky Int'l Elec's, Inc. v. Ritz*, 578 U.S. 355, 371–73 (2016) (Thomas, J., dissenting). As Chief Judge Pryor has explained:

> To the contrary, there are at least two circumstances in which a defendant could have "a prior 2-point violent offense" and "a prior 3-point offense . . . under the sentencing guidelines" but fewer than five "criminal history points." Under the sentencing guidelines, a two-point offense adds no points to the defendant's criminal-history score if the sentence was imposed more than 10

12

> years before the defendant commenced
> the present offense. Similarly, a three-
> point offense does not contribute to the
> criminal-history score if the defendant
> finished serving the sentence more than
> 15 years before commencing the present
> offense.

*Garcon*, 54 F.4th at 1281 (citing 18 U.S.C. § 3553(f)(1);
U.S.S.G. § 4A1.1(b) & cmt. n.2); *see Jones*, 60 F.4th at
239 ("[S]ubsection (A) targets serious recidivists—
those with more than one prior sentence excluding
one-point offenses[.]"); *Palomares*, 52 F.4th at 655–56
(Willett, J., dissenting). *Cf. Lopez*, 998 F.3d at 440
("Subsection (A) is not superfluous under a
conjunctive interpretation; it clarifies that a single
three-point violent offense does not bar a defendant
from safety-valve relief.").

Nor, for that matter, can the rule against
absurdities justify a judicial rewrite of Section
3553(f)(1).[4] As Justice Gorsuch has explained, this
doctrine does not authorize courts to revise statutes
for policy reasons:

> Absurdity doctrine does not license
> courts to improve statutes (or rules)
> substantively, so that their outcomes
> accord more closely with what we might
> think is the preferred result. At most, it
> may serve a linguistic function—

---

[4] In any event, even if it otherwise applied "the absurdity canon
must yield to the rule of lenity." *Palomares*, 52 F.4th at 658
(Willett, J., dissenting).

13

capturing circumstances in which a
statute's apparent meaning is so
unthinkable that any reasonable reader
would immediately (1) know that it
contains a technical or ministerial
mistake, and (2) understand the correct
meaning of the text.[5]

*Yellen v. Confederated Tribes of the Chehalis
Reservation*, 141 S. Ct. 2434, 2460 n.14 (2021)
(Gorsuch, J., dissenting) (cleaned up); *see also Small
v. United States*, 544 U.S. 385, 404 (2005) (Thomas, J.,
dissenting) ("We should employ that canon only
'where the result of applying the plain language would
be, in a genuine sense, absurd, *i.e.*, where it is quite
impossible that Congress could have intended the
result . . . and where the alleged absurdity is so clear
as to be obvious to most anyone.'" (quoting *Pub.
Citizen v. United States Dep't of Justice*, 491 U.S. 440,
470–71 (1989) (Kennedy, J., concurring in judgment)).

Plainly, that linguistic function is not implicated
here. Congress's use of "and" in Section 402 of the
FSA, as codified in 18 U.S.C. § 3553(f)(1), is not a
scrivener's error, as underscored by Section 402's
intended effect: reducing the number of defendants
convicted of nonviolent drug crimes who are sentenced

---

[5] "Anything more would threaten the separation of powers,
undermine fair notice, and risk upsetting hard-earned legislative
compromises." *Confederated Tribes of the Chehalis Reservation*,
141 S. Ct. at 2460 n.14 (Gorsuch, J., dissenting).

14

to mandatory minimums.[6] Section 402's heading, Broadening of Existing Safety Valve, *see* FSA, § 402, 132 Stat. at 5221, underscores Congress's intent. Indeed, "[t]he First Step Act was enacted to decrease the number of criminal defendants subject to mandatory minimum sentences." *Garcon*, 54 F.4th at 1284. "One of the key points and purposes of the First Step Act is to improve fairness in prison sentences by permitting courts to depart from the mandatory minimum under the broadened safety valve criteria when sentencing low-level, nonviolent drug offenders who cooperate with law enforcement." *United States v. Lopez*, No. 19-cr-0261, 2019 U.S. Dist. LEXIS 142342, at *18-19 (S.D. Cal. Aug. 21, 2019), *aff'd on other grounds*, 998 F.3d 431 (9th Cir. 2021). And that is exactly what Section 3553(f)(1)'s plain language accomplishes by narrowing the universe of defendants who are disqualified from safety-valve eligibility on the basis of criminal history characteristics. "That Congress might not have anticipated how broadly its reforms" in the FSA "would sweep does not make those reforms absurd." *Garcon*, 54 F.4th at 1284.

In sum, "[t]here is nothing irrational, absurd, superfluous, or otherwise faulty about applying section 3553(f)(1) straightforwardly, allowing the word 'and' to mean 'and[.]'" *Pace*, 48 F.4th at 768 (Wood, J., dissenting). And "the plain, obvious and

---

[6] The Sentencing Commission recently amended U.S.S.G § 5C1.2 "to reflect the statutory changes to section 3553(f) made by the First Step Act." 88 Fed. Reg. 28,254, 28,265 (May 3, 2023). The amendments to § 5C1.2 track Section 3553(f)(1)'s text and use "and." *See id.* at 28,264. The Commission's amendment would presumably have corrected any obvious drafting error.

15

rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925); *see Palomares*, 52 F.4th at 658 (Willett, J., dissenting) ("That principle favors tolerating non-obvious surplusage rather than ignoring rudimentary grammar.").

By contrast, courts "give our language, and our language-dependent legal system, a body blow when [courts] hold that it is reasonable to read 'or' for 'and.'" *MacDonald*, 859 F.2d at 746 (Kozinski, J., dissenting). For as Judge Willett has observed:

> Manufactured ambiguity poses a special threat to our language's elemental particles. How can Congress express its will if everyday words slip into linguistic black holes so dense that settled language rules break down? When judges say that certain words are inherently ambiguous, we beget a self-fulfilling prophecy. And when we use complicated semantic bracework to augment ordinary meaning, we risk creating a negative feedback loop if Congress sees the favor as an invitation rather than a one-off.

*Palomares*, 52 F.4th at 652 (Willett, J., dissenting). That observation resonates here, counseling in favor of enforcing the statute's plain meaning.

16

### III. Taking Congress At Its Word—"And"— Allows Judges to Impose Individualized Sentences that Protect Public Safety, Also Tempering Justice With Mercy.

The safety-valve provision's limited purpose and discretionary nature further underscore the rationality of reading Section 3553(f)(1)'s criminal-history-eligibility requirements conjunctively. The safety valve provision does not operate as a get-out-of-jail-free card but rather allows judges to exercise discretion in appropriate cases to temper justice with mercy, treating defendants as individuals. It operates as a "[l]imitation on applicability of statutory minimums in certain cases." 18 U.S.C. § 3553(f). "Th[is] 'safety valve' provision allows the court to disregard an applicable statutory minimum if it finds certain criteria." *United States v. Owens*, 38 F.4th 1, 3 (8th Cir. 2022) (citing 18 U.S.C. § 3553(f)). It thereby "functions as a built-in authorization for a trial judge to exercise discretion based on individualized circumstances."[7] John F. Schifalacqua, *A Model for Interpreting Federal Sentencing Law*, 48 N. Ky. L. Rev. 39, 81 (2021). But that is all that it does, empowering judges to impose proportionate, just sentences, anchored to the Sentencing Guidelines,

---

[7] "'From the beginning of the Republic, federal judges were entrusted with wide sentencing discretion.'" *Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) (citation omitted); *see also Koon v. United States*, 518 U.S. 81, 113 (1996).

17

through the familiar rubric of the Section 3553(a) factors.[8]

Reading Section 3553(f)(1) as written will thus not endanger public safety or require the release of dangerous individuals. "To qualify for safety valve relief, a defendant must prove the five requirements in 18 U.S.C. § 3553(f) by a preponderance of the evidence." *United States v. Gonzalez-Carmona*, 35 F.4th 636, 642 (8th Cir. 2022); *accord United States v. Gardner*, 32 F.4th 504, 526 (6th Cir. 2022). And "[a] criminal defendant's ability to satisfy section 3553(f)(1) does not guarantee that the defendant will satisfy the four other subsections necessary to qualify for safety-valve relief. To the contrary, those subsections will often disqualify defendants the government considers unworthy of relief." *Garcon*, 54 F.4th at 1283 (citing 18 U.S.C. § 3553(f)(2)–(5)); *accord Jones*, 60 F.4th at 239 ("[E]ven if the defendant meets all the statutory requirements, application of

_____

[8] Section 3553(a) generally instructs courts to "impose a sentence sufficient, but not greater than necessary[.]" 18 U.S.C. § 3553(a). To do this, courts must consider, among other things:, "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" *Id.* §3553(a)(2). These factors reflect the four traditional rationales for punishment: retribution, deterrence, incapacitation, and rehabilitation. In addition, courts must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" *Id.* § 3553(a)(1).

18

the safety valve is left to the sentencing judge's discretion. Stated differently, that a defendant with a lifetime of serious drug offenses is eligible under § 3553(f)(1) does not mean she will obtain safety valve relief.").

In addition to the Section 3553(f)(1) criminal-history eligibility criteria at issue here, a defendant must show that he "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]" 18 U.S.C. § 3553(f)(2). The offense also must not have "result[ed] in death or serious bodily injury to any person[.]" *Id.* § 3553(f)(3). And the defendant cannot be "an organizer, leader, manager, or supervisor of others in the offense[.]"*Id.* § 3553(f)(4). Finally, the defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses[.]" *Id.* § 3553(f)(5); *see also Gardner*, 32 F.4th at 526 (discussing "tell all" criterion). That is a tall order. And there is reason to think the rigorous application of these additional criteria will generally limit the universe of defendants eligible for safety-valve relief to lower-level drug offenders who are less likely to pose a threat to society.

Importantly, even where a defendant does meet all of Section 3553(f)'s threshold eligibility requirements, "a judge who has discretion to impose a shorter sentence, based on the safety-valve provision, may reasonably choose not to exercise that discretion if consideration of the defendant's history counsels

19

against it."[9] *Garcon*, 54 F.4th at 1284. In other words, "safety valve eligibility does not guarantee [a defendant] a below-statutory minimum sentence; it just gives the court the opportunity to sentence below the minimum if it believes it is appropriate." *Owens*, 38 F.4th at 3. And "a court compelled to disregard a mandatory minimum sentence in favor of the guidelines range at the advice-determining stage may vary upward to and even past the mandatory minimum point after considering the § 3553(a) factors—so long as the final sentence is reasonable."[10] *United States v. Quirante*, 486 F.3d 1273, 1276 (11th Cir. 2007). This critical check ensures that dangerous repeat offenders and other undeserving defendants will not reap an unjust windfall by rote application of the statute at the expense of public safety.[11] *See also Garcon*, 54 F.4th at 1307 (Brasher, J., dissenting) ("[H]ere is my advice for district judges: The Court's

---

[9] For example, defendants who knowingly traffic large quantities of fentanyl.

[10] To be sure, where the safety-valve provision applies, the defendant's sentence must be anchored to the advisory guidelines range. *See Quirante,* 486 F.3d at 1275–76. However, because the Sentencing Guidelines are only advisory, *see United States v. Booker*, 543 U.S. 220 (2005), courts can depart or vary upward or downward from the guidelines range in appropriate cases so long as the sentence imposed is grounded in the Section 3553(a) factors and reasonable.

[11] Of course, there are cases cutting the other way that underscore why Section 3553(f)(1) should be construed as written. *See, e.g., Lopez*, 2019 U.S. Dist. LEXIS 142342, at *19 ("The parties agree that Defendant is a low-level nonviolent drug offender who has cooperated with law enforcement. His prior conviction for spray painting a building is over ten years old, yet he faces a mandatory minimum five-year sentence.").

20

opinion gives you discretion to sentence offenders with serious and violent criminal histories to sentences below the applicable mandatory minimum. But you shouldn't do it."). In addition, if a district court abuses its discretion under the safety valve by imposing an unreasonably low sentence, the government may appeal, ensuring review of the sentence by at least three additional judges. *See* 28 U.S.C. § 1291.

Even when the safety valve applies, Guidelines sentences are often quite lengthy. *Cf. Yates v. United States*, 574 U.S. 528, 569 (2015) (Kagan, J., dissenting) (noting the problem of "overcriminalization and excessive punishment in the U.S. Code"). Consider this case. At the time he was sentenced, Mr. Pulsifer was almost 60 years old. *See* Pet. App. 38a. Without the safety valve, the applicable mandatory minimum "was fifteen years' imprisonment."[12] Pet. App. 2a (citing 21 U.S.C. § 841(b)(1)(A)(viii)). With the safety valve, Mr. Pulsifer's Guidelines range would have been 120 to 150 months, yielding a within-Guidelines sentence of at least ten years' imprisonment. *See* Pet. App. 38a; Cert. Pet. 24. Even if the district court then granted a 2-level downward variance in light of the FSA, Mr. Pulsifer would still face almost nine years in prison. *See* Cert. Pet. 24 ("Mr. Pulsifer's Guidelines . . . would be 100–125 months with a 2-level variance reflecting the First Step Act." (citing Pulsifer CA Br. 3, 10-11; U.S.S.G. §§ 2D1.1(b)(18), 5C1.2; PSR ¶ 130, p. 28)). In all possible outcomes, Mr. Pulsifer must serve a

---

[12] "[S]tarting with the fifteen-year minimum, the [district] court made an unrelated reduction under different authority and sentenced Pulsifer to 162 months' imprisonment." Pet. App. 2a.

21

lengthy prison term. But the difference between a 100-month sentence, at the low end, and the approximately thirteen-year sentence Mr. Pulsifer received might mean a great deal to him. And those extra years of warehousing him in a prison at taxpayer expense would seem to serve little, if any, societal purpose.

Mr. Pulsifer's case well illustrates the practical operation of the safety valve, as well as the stakes of this case for thousands of defendants.[13] And it further confirms that the best reading of "and" is "and."

## IV. The Rule of Lenity Resolves Any Lingering Doubts.

To the extent reasonable doubt persists as to the best reading of" Section 3553(f)(1) after a thorough statutory investigation applying the traditional tools of statutory interpretation, "a venerable principle supplies a way to resolve it." *Bittner*, 143 S. Ct. at 724 (Gorsuch, J., joined by Jackson, J.). The rule of lenity "is a new name for an old idea—the notion that 'penal laws should be construed strictly.'" *Wooden v. United*

---

[13] The Sentencing Commission recently stated: "Using fiscal year 2021 data, Commission analysis estimated that of 17,520 drug trafficking offenders, 11,866 offenders meet the non-criminal history requirements of the safety valve (18 U.S.C. § 3553(f)(2)-(5)). . . . Under a disjunctive interpretation of the expanded criminal history provision, 1,987 offenders would become eligible. The remaining 4,111 offenders would be ineligible. In comparison, under the Ninth Circuit's conjunctive interpretation of the expanded criminal history provision, 5,778 offenders would become eligible. The remaining 320 offenders would be ineligible." 88 Fed. Reg. 7,180, 7,186 (Feb. 2, 2023).

22

*States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J.,
joined by Sotomayor, J., concurring in judgment)
(quoting *The Adventure*, 1 F. Cas. 202, 204, F. Cas. No.
93 (No. 93) (CC Va. 1812) (Marshall, C.J.)); *see also*
*Cargill v. Garland*, 57 F.4th 447, 473 (5th Cir. 2023)
(en banc) (Ho, J., concurring in part and concurring in
judgment) ("Under the rule of lenity, '[p]enal statutes
must be construed strictly.'" (quoting 1 William
Blackstone, Commentaries *88).

"It is a principle grown hoary in age and wisdom,
that penal statutes are to be construed strictly, and
criminal statutes to be examined with a favorable
regard to the accused." *United States v. Mann*, 26 F.
Cas. 1153, 1157 (CC NH 1812); *see also* Amy Coney
Barrett, *Substantive Canons and Faithful Agency*, 90
B.U. L. Rev. 109, 128–29 (2010). Indeed, "[t]hat rule
is 'perhaps not much less old than' the task of
statutory 'construction itself.'" *United States v. Davis*,
139 S. Ct. 2319, 2333 (2019) (quoting *United States v.
Wiltberger*, 18 U.S. 76, 5 Wheat. 76, 95 (1820)
(Marshall, C. J.)).

"In the hands of judges in this country, . . . lenity
came to serve distinctively American functions—a
means for upholding the Constitution's commitments
to due process and the separation of powers." *Wooden*,
142 S. Ct. at 1082 (Gorsuch, J., concurring in
judgment). As Justice Scalia explained: "This
venerable rule not only vindicates the fundamental
principle that no citizen should be held accountable
for a violation of a statute whose commands are
uncertain or subjected to punishment that is not
clearly prescribed. It also places the weight of inertia
upon the party that can best induce Congress to speak
more clearly and keeps courts from making criminal

23

law in Congress's stead." *United States v. Santos*, 553 U.S. 507, 514 (2008). For as Chief Justice Marshall wrote: "[T]he power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *Wiltberger*, 18 U.S. (5 Wheat.) at 95; see U.S. Const. Art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress[.]"). "[P]erhaps most importantly, the rule of lenity serves our nation's strong preference for liberty." *United States v. Nasir*, 17 F.4th 459, 473 (3d Cir. 2021) (en banc) (Bibas, J, concurring).

To be sure, "[t]he rule applies only when, after consulting traditional canons of statutory construction," the Court finds it is "left with an ambiguous statute." *Shular v. United States*, 140 S. Ct. 779, 787 (2020) (internal quotation marks and citation omitted). But "[w]here the traditional tools of statutory interpretation yield no clear answer, the judge's next step isn't to legislative history or the law's unexpressed purposes. The next step is to lenity."[14] *Wooden*, 142 S. Ct. at 1085–86 (Gorsuch, J., concurring in judgment). *Cf. Wiltberger*, 18 U.S. (5 Wheat.) at 105 ("[P]robability is not a guide which a court, in construing a penal statute, can safely take.").

Under the rule of lenity, "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *Davis*, 139 S. Ct. at 2333; *see also*

---

[14] Section 3553(f)'s legislative history is irrelevant. "[L]egislative history is not the law," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018), and would be trumped by the rule of lenity in any event, *see Hughey v. United States*, 495 U.S. 411, 422 (1990).

*Yates,* 574 U.S. at 547; *United States v. Lacher*, 134 U.S. 624, 628 (1890) ("[B]efore a man can be punished, his case must be plainly and unmistakably within the statute."). This means that "*all reasonable doubts* concerning its meaning ought to operate in favor of the" defendant.[15] *Harrison v. Vose*, 50 U.S. (9 How.) 372, 378 (1850) (emphasis added); *see also* Scalia & Garner, *supra*, 299 ("The criterion we favor [for whether lenity applies] is this: whether, after all legitimate tools of interpretation have been applied, 'a reasonable doubt persists.'" (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990) (per Marshall, J.)). *Cf. Abramski v. United States*, 573 U.S. 169, 204 (2014) (Scalia, J., dissenting) (lenity applies when application of traditional "tools do not decisively dispel the statute's ambiguity"). In other words, the words of the statute "must be such as to leave no room for a reasonable doubt upon the subject." *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 396 (1868).

---

[15] The panel below appeared to think that the rule of lenity only applies in the face of "grievous ambiguity." *See* Pet. App. 9a. This Court should reject that cramped reading and instead make clear that lenity applies when, after application of the traditional tools of statutory interpretation, reasonable doubts as to a penal statute's sweep persist. *See Wooden,* 142 S. Ct. at 1083–86 (Gorsuch, J., concurring in judgment); *see also id.* at 186 n.10 (Gorsuch, J., concurring in judgment) ("Historically, lenity applied to all 'penal' laws—that is, laws inflicting any form of punishment, including ones we might now consider 'civil' forfeitures or fines."). In any event, to the extent "and" could plausibly be read either conjunctively ("and") or disjunctively ("or"), Section 402 would trigger lenity even under the "grievous ambiguity" formulation of the rule. *Cf. Garcon*, 54 F.4th at 1285–86 (Rosenbaum, J., concurring) (concluding lenity applies under grievous ambiguity formulation of rule).

25

"Nineteenth century treatises . . . put the point this way: '[I]f there is such an ambiguity in a penal statute as to leave reasonable doubts of its meaning, it is the duty of a court not to inflict the penalty.'" *Wooden*, 142 S. Ct. at 1084 (Gorsuch, J., concurring in judgment) (quoting J. Sutherland, Statutes and Statutory Construction § 353, p. 444 (1891)).

"[T]his principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1980); *see, e.g., United States v. Granderson*, 511 U.S. 39, 56–57 (1994); *see Taylor v. United States*, 495 U.S. 575, 596 (1990) (suggesting "sentencing provisions[] are to be construed in favor of the accused"). "Under the rule of lenity, this Court has long held, statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." *Bittner*, 143 S. Ct. at 724 (Gorsuch, J.) (quoting *Commissioner v. Acker*, 361 U.S. 87, 91 (1959)). The rule of lenity thus applies with full force to Section 3553(f)(1), to the extent it contains ambiguities unresolvable even after a full statutory investigation.[16]

_____

[16] "Doubtless, lenity carries its costs. . . . But, as the framers appreciated, any other course risks rendering a self-governing people 'slaves to their magistrates,' with their liberties dependent on 'the private opinions of the judge.'" *Wooden*, 142 S. Ct. at 1083 (Gorsuch, J., concurring in judgment) (quoting 4 Blackstone 371 (1769)).

26

## V.    It is Not the Province of This Court to Rescue Congress From Its Policy Choices.

Construing Section 3553(f)(1)'s requirements conjunctively respects the separation of powers, even if it might seem counterintuitive or unwise as a matter of public policy. "[W]hether or not this is a prudent policy choice is not for the judiciary to decide: that determination lies solely with the legislative branch." *Jones*, 60 F.4th at 239. "Congress is the master of the statutes it passes[.]" *Pace*, 48 F.4th at 768 (Wood, J., dissenting). And as former Chief Justice Earl Warren has observed, courts "are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction." *Richards v. United States*, 369 U.S. 1, 10 (1962) (Warren, C.J.). *Cf. Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it.").

"Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock*, 140 S. Ct. at 1754; *see also Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (Scalia, J.) ("The question . . . is not what Congress 'would have wanted' but what Congress enacted."). As this Court has explained: "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. . . . This allows both of our branches to adhere to our respected, and respective, constitutional roles." *Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004).

27

Accordingly, this Court should not "ignore Congress's plain and unambiguous language just because a statute might reach further than some in Congress expected." *Lopez*, 998 F.3d at 444. And this Court should reject the government's invitation to magically transform "and" into "or" for what it is: "simply a request for a swap of policy preferences." *Id.* at 440. *Cf. Haynes*, 55 F.4th at 1085 (Griffin, J., dissenting) ("[T]he majority's acceptance of the government's interpretation is no more than doing what it says it is not: 'conflat[ing] plausibility with our own sense of good policy.'"). For as Judge Newsom has warned: "Were we to engage in interpretive gymnastics to make § 3553(f)(1) say what it objectively, demonstrably, verifiably does not say—in essence, to save Congress from itself—we would do the separation of powers, and democracy itself, a profound disservice." *Garcon*, 54 F.4th at 1290 (Newsom, J., concurring).

It may well be that, as a matter of sentencing policy, interpreting "and" according to its ordinary public meaning sweeps too broadly; alternatively, adopting an "or" reading may be underinclusive. But it is not this Court's role to play Goldilocks, editing the statute until it is just right. *Cf. Concepcion*, 142 S. Ct. at 2407 (Kavanaugh, J., dissenting) ("Perhaps the Court's decision represents better sentencing policy. Perhaps not. But under the Constitution's separation of powers, this Court may not simply rewrite the First Step Act as the Court thinks best."). To the contrary, "[t]he Constitution anticipates, though it does not require, constructive exchanges between Congress and the federal courts." *Oklahoma v. United States*, 62 F.4th 221, 225 (6th Cir. 2023) (citing *Youngstown*

28

*Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)) (explaining that "interdependence" and "reciprocity" should characterize the relationship between the branches as much as "separateness" and "autonomy"). "If Congress meant § 3553(f)(1)'s 'and' to mean 'or,' it has the authority to amend the statute accordingly." *Lopez*, 998 F.3d at 444. But unless and until Congress chooses to do so, this Court should read Section 3553(f)(1) as written.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the court of appeals.

Respectfully submitted,

Michael Pepson
  *Counsel of Record*
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
(571) 329-4529
mpepson@afphq.org

*Counsel for Amicus Curiae*          May 26, 2023